IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| THE COLLEGE OF WILLIAM AND MARY IN VIRGINIA,<br><br>      Plaintiff,<br><br>      v.<br><br>W M SYMPOSIA, INC.,<br><br>      Defendant. | Case No. 4:25-cv-94 |

## OPINION & ORDER

W M Symposia, Inc. ("Symposia") moves to dismiss The College of William and Mary's ("William and Mary") complaint, ECF No. 1, for lack of personal jurisdiction. ECF Nos. 12 (motion), 13 (memorandum). For the reasons stated herein, the motion will be **GRANTED**.

### I.   BACKGROUND

At this stage, the Court assumes the facts alleged in the complaint are true. William and Mary is a public institution of higher education with its main campus located in Williamsburg, Virginia. ECF No. 1 ¶¶ 10, 19. William and Mary has been using the WM formative marks for more than three centuries. *Id.* ¶¶ 42–53. It has registered several WM trademarks with the United States Patent and Trademark Office ("USPTO"), and three of those registrations have obtained incontestable status under the Lanham Act, 15 U.S.C. § 1065. *Id.* ¶¶ 56, 58. Due to longstanding usage,

William and Mary also owns common law trademark rights in several WM and W&M marks. *Id.* ¶ 59.

Symposia is a nonprofit corporation located in and organized under the laws of Arizona. ECF No. 1 ¶ 11. Formed in 1992, Symposia advertises its education and information exchange related services using marks including: WM STEM; WM STEM & Design; WM SYMPOSIA; WM SYMPOSIA & Design; and WM STEM EDUCATORS' COUNCIL & Design. *Id.* ¶¶ 6, 63–65. Symposia obtained a registration with the USPTO for its "WM SYMPOSIA & Design" mark and is currently pursuing a registration for the wordmark "WM." *Id.* ¶¶ 89, 102–03.

William and Mary asked Symposia to rebrand and take steps to prevent confusion with William and Mary's WM-formative marks and educational services, but Symposia refused to do so. *Id.* ¶¶ 7–8.

Subsequently, William and Mary sued Symposia, alleging trademark infringement, unfair competition, false designation of origin, and trademark dilution in violation of the Lanham Act (15 U.S.C. §§ 1114, 1125, 1125(c)) (Counts I–III), and common law unfair competition and false designation of origin (Count V). ECF No. 1 ¶¶ 115–139, 146–154. William and Mary additionally brought a claim for cancelation of Symposia's trademark registration pursuant to 15 U.S.C. §§ 1064 and 1119 (Count IV). *Id.* ¶¶ 140–45.

Symposia filed the instant motion to dismiss, alleging it is not subject to personal jurisdiction in this Court. ECF Nos. 12 (motion), 13 (memorandum). The

motion has been fully briefed and is ripe for disposition. ECF Nos. 17 (opposition), 19 (reply).

## II. LEGAL STANDARDS

### A. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(2)

"[T]he plaintiff bears the burden of demonstrating personal jurisdiction" when a defendant challenges it under Fed. R. Civ. P. 12(b)(2). *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 131 (4th Cir. 2023) (quotation marks and citation omitted). "The plaintiff must establish personal jurisdiction by a preponderance of the evidence but need only make a prima facie showing." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citation omitted). Courts may look beyond the complaint to determine whether the plaintiff has met its burden, but they must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citations and quotations marks omitted).

### B. Personal Jurisdiction

A district court may exercise personal jurisdiction over a defendant if the defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1). The exercise of such jurisdiction "is lawful if (1) [it] is authorized by the long-arm statute of the state in which [the district court] sits and (2) the application of the long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *UMG*, 963

F.3d at 350 (cleaned up); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

The Virginia and federal constitutional due process requirements for personal jurisdiction are met when a defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted); *see UMG*, 963 F.3d at 351.[1] The plaintiff must show that the defendant "purposefully directed [their] activities at residents of the forum" and that the plaintiff's cause of action "arise[s] out of" those activities. *Burger King*, 471 U.S. at 472 (quotation marks and citations omitted); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (For the defendant to have minimum contacts, its "suit-related conduct must create a substantial connection with the forum [s]tate."). This protects a defendant from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* at 475.

> [The Fourth Circuit has] synthesized the due process requirements for asserting specific personal jurisdiction into a three-prong test: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the [s]tate; (2) whether the plaintiff['s] claims arise out of those activities directed at

---

[1] "Virginia's long-arm statute extends personal jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *UMG*, 963 F.3d at 350–51 (citing *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560 (Va. 1999)) (other citation omitted). "Thus, the district court has jurisdiction over a nonresident defendant . . . if the exercise of such jurisdiction comports with the strictures of constitutional due process." *Id.* at 351.

> the [s]tate; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*UMG*, 963 F.3d at 351–52 (quotation marks and citations omitted). What matters is "the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.

## III. ANALYSIS

As an initial matter, there is no general jurisdiction over Symposia because it does not have such continuous and systematic contacts with Virginia as to render it essentially at home. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). A corporate defendant is at home in its state(s) of incorporation and principal place of business, and in another forum only under "exceptional" circumstances. *Id.* (quotations marks and citations omitted). Arizona is Symposia's state of incorporation and place of business. ECF No. 1 ¶ 11. And because Symposia does not have offices, employees, property, or ongoing business in Virginia, the plaintiffs undoubtedly cannot demonstrate the existence of "exceptional" circumstances.[2]

The remaining inquiry focuses on specific jurisdiction. Construing all relevant pleading allegations in the light most favorable to William and Mary, Symposia's contacts with Virginia are as follows:

---

[2] Although William and Mary does not concede the lack of general jurisdiction over Symposia, it fails to submit any argument in support of general jurisdiction, instead stating that the Court need not address the issue because the presence of specific jurisdiction is sufficient. ECF No. 17 at 7.

5

 (1) Symposia has a "highly interactive[3] and fully developed e-commerce website" through which it sells registrations and exhibit spaces for its annual conference in Arizona, ECF No. 13 at 7; ECF No. 17 at 11–12; ECF No. 18-5; ECF No. 18-6;

 (2) Symposia solicits and sells business sponsorships via its website,[4] and at least 50% of Symposia's largest sponsors are Virginia-headquartered companies, ECF No. 17 at 10, 12; ECF No. 18-1; ECF No. 18-2 at 2; ECF No. 18-3; ECF No. 18-4;

 (3) In collaboration with the Roy G. Post Foundation, Symposia accepts scholarship applications from undergraduate and graduate students from around the world; of the more than 375 scholarships awarded since 2003, seven have gone to Virginia students, ECF No. 13 at 2–3; ECF No. 17 at 12; ECF No, 18-12; ECF No. 18-14 at 2; ECF No. 18-15; ECF No. 18-16;

 (4) Two volunteer members of Symposia's STEM Educators' Council are Virginia residents who hold teaching positions at the Central Virginia Governor's School for Science and Technology, ECF No. 13 at 3, 7–8; ECF No. 17 at 12, 16–17;

---

[3] William and Mary states that Symposia's website "hosts interactive forums and discussion boards through which individuals and entities can [] post and share content." ECF No. 17 at 12; ECF No. 18-8 at 4–5. The website also features a portal that allows students to share their resumes and career goals for viewing by Symposia conference attendees. ECF No. 17 at 12; ECF No. 18-9 at 3.

[4] William and Mary contends that sponsorships "are sold through email interactions between [] Symposia and interested sponsors." ECF No. 17 at 10. Based on the information provided to the Court, any such correspondence occurs only *after* a business initiates contact via the sponsorship application portal located on Symposia's website, which is widely accessible to companies in all states. ECF No. 17 at 10; ECF No. 18-2 at 2. Although Symposia may eventually engage in "repeated communications" with sponsors to "negotiate" the details of the sponsorship agreements, there is no indication that Symposia affirmatively reaches into Virginia to solicit such sponsorships. ECF No. 17 at 12.

>   (5) Symposia's seventeen-member Board of Directors includes four members who live and work in Virginia, ECF No. 13 at 2; ECF No. 17 at 16; and
>
>   (6) Symposia obtained a certification from a Virginia-headquartered global education accreditor (IACET), ECF No. 1 ¶¶ 14, 70–71; ECF No. 13 at 3.[5]

The aforementioned contacts are too random and attenuated to justify the exercise of personal jurisdiction. With respect to internet-based activities, there is no indication that Symposia has "direct[ed] electronic activity into [Virginia] . . . with the manifested intent" of targeting Virginia residents. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). Symposia's website is widely accessible to users in any jurisdiction. And although the website has interactive features, such interaction does not begin with Symposia; rather, users interested in scholarships, business sponsorships, conference registrations and exhibit spaces initiate contact with Symposia. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 562 (4th Cir. 2014) (whether the defendant initiated contact with the forum state "significantly impact[s] the outcome of a personal jurisdiction analysis"). And that some board members, council members, scholarship recipients, business sponsors,

---

[5] William and Mary additionally states that on September 23, 2025—more than one month after the complaint was filed—Symposia made a Facebook post advertising the attendance of five members of its senior leadership team at an upcoming three-day, third-party workshop in Arlington, Virginia. ECF No. 17 at 13–14; ECF No. 18-10 at 2. However, because post-filing events generally cannot cure a jurisdictional defect that existed when the complaint was filed, the Court will not consider the Facebook post in its analysis. *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.*, No. 1:09-cv-550, 2009 WL 3366929, at *6 (E.D. Va. Oct. 16, 2009) (single email from defendant to plaintiff cannot establish personal jurisdiction because it was sent post-filing) (collecting cases).

7

and an accrediting organization happen to reside and/or work in Virginia entails merely fortuitous contacts with the forum—not purposeful availment. *See Walden*, 571 U.S. at 286 (The minimum contacts analysis looks to the defendant's "own affiliation with the [s]tate, not . . . the random, fortuitous, or attenuated contacts [they] make[] by interacting with other persons affiliated with the [s]tate.") (quotation marks and citation omitted).

Symposia could not "reasonably anticipate being haled into court" in Virginia based on these facts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Accordingly, there is no basis to find personal jurisdiction over Symposia, whose motion to dismiss for lack of personal jurisdiction will be granted.[6]

## IV. CONCLUSION

For the foregoing reasons, W M Symposia's motion to dismiss (ECF No. 12) is **GRANTED**. The complaint is **DISMISSED WITHOUT PREJUDICE.**

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED**.

/s/
Jamar K. Walker
United States District Judge

Newport News, Virginia
February 26, 2026

---

[6] The Court does not reach the second and third factors—whether the plaintiff's claims arise out of the defendant's activities directed at the state, and whether the exercise of personal jurisdiction would be constitutionally reasonable—since the first is not met. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) ("[O]nly if[] we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three.").